Agnes, Peter W., J.
I. INTRODUCTION
This is a civil action that arises from allegations that defendant D. Masters Enterprises, Inc. (“D.M.E.”), failed to pay commissions and base wages owed to plaintiff, Sean Mindes pursuant to a contract for services as a “Carpentiy and Construction Sales/Estimator.” Mindes alleges that D.M.E. refused to provide relevant financial statements to enable him to calculate his due compensation, and that it further failed to respond appropriately to discovery requests. Mindes now moves to compel D.M.E. to provide more complete answers to interrogatories and to produce state and federal tax filings.

2. DISPUTED INTERROGATORIES

A. Interrogatory No. 2
Mindes seeks information about any D.M.E. employees who have knowledge of the facts in Mindes’ complaint or D.M.E.’s counterclaims, and the substance of their knowledge. D.M.E. objects on the grounds that the request is vague and overly broad, and that it “cannot state the substance of an employee’s knowledge” because any attempt to discern a particular employee’s knowledge would be “purely circumstantial.”
D.M.E. is correct that the interrogatory is overly broad, but Mindes is entitled to a reasonably circumscribed summary of each employee’s substantive knowledge of the facts underlying the claims and counterclaims. It has long been the practice in Massachusetts to recognize a corporation’s duty to make inquiry of its employees to answer interrogatories. See Robbins v. Brockton Street Ry. Co., 180 Mass. 51, 54 (1901) (“The corporation, being reputed to have done whatever its servants did in the course of their employment, is supposed to know what they did, and therefore cannot shelter itself under a general profession of personal ignorance”).
It is therefore ordered that D.M.E. provide sufficient information about the substance of each employee’s knowledge to enable Mindes to determine whether it would be worth the time and expense to seek to depose certain individuals. This order does not apply to knowledge that D.M.E.’s employees obtained from corporate counsel during the course of representation, nor does it apply to knowledge they derived from materials prepared in anticipation of litigation. However, to the extent that D.M.E.’s employees gained knowledge of facts underlying the dispute during the ordinary course of business, that information is not *607 protected by attorney-client privilege or work product doctrine.

B. Interrogatory No. 6

It is ordered that D.M.E. provide the date of each commission payment to Mindes and the calculations it used to arrive at each payment.
C. Interrogatory No. 9
Insofar as D.M.E. referred the matter to an attorney upon notice of Mindes’ claim, the actions of D.M.E.’s employees in direct response to the claim are privileged. Mindes may discover the processes used to determine payment of salary, commission and bonuses by making a more pointed request for that information, rather than by inquiring into D.M.E.’s internal response to his claims.

D. Interrogatory No. 13

Mindes seeks a list of all jobs that he sold to customers during the course of his employment. Though D.M.E. is entitled to refer to business records in response to an interrogatory, if it chooses to answer by inviting the asking party to examine its records, it must specify in sufficient detail the records from which the answer can be determined. Mass.R.Civ.P. 33(c). Therefore, even if reviewing specific documents listing the jobs Mindes sold presents an “equality of bother,” D.M.E. must at least direct Mindes to the relevant documents so that the answer can easily be located. Mass.R.Civ.P. 33(c), Reporter’s Notes (1973).

E. Interrogatory No. 14

In connection with Interrogatory No. 13, Mindes seeks specific information about each job he sold. D.M.E. may invoke the business records option to answer requests for the contract price for each job, change orders, monies received from customers, expenses, profit margin, and Mindes’ commission for each job, provided that it specifies the records from which such information can be readily obtained. To the extent that the methods for calculating Mindes’ compensation are not explained fully in the documents produced, D.M.E. must respond by answering more completely or by directing Mindes to another source that describes the calculations in sufficient detail.

F. Interrogatory No. 15

Mindes seeks detailed facts supporting D.M.E.’s counterclaim that “Mindes routinely took large deposits on projects and artificially inflated the profit margin . . . thus leaving Mindes overcompensated.” This interrogatory is not vague, overly broad, or unduly burdensome. It is ordered that D.M.E. supplement its generalized claim about Mindes’ sales tactics with information about specific instances when the alleged practice occurred. If D.M.E. does not have detailed information or reports to support its claim, then it should say so in its answer. D.M.E.’s position that the interrogatory does not ask about particular jobs is semantic quibbling that suggests it has misconstrued the plain meaning of the phrase “detail the facts.”
G. Interrogatory No. 16
D.M.E.’s answer directs Mindes to his job description to show his commission calculations, and then further explains that D.M.E. paid 30% of net profits, not 30% of the profits from each job. Mindes’ request for exact figures will be satisfied under this Court’s orders with respect to Interrogatory Nos. 6 and 14.
The portion of the interrogatory asking why D.M.E. believes Mindes has been fairly and fully compensated is cumulative in light of D.M.E.’s initial answer in Interrogatory No. 21 that Mindes was not owed any additional money. D.M.E.’s explanation as to why it believes it is entitled to damages from Mindes is sufficient in that D.M.E. summarizes its basic counterclaims and directs Mindes to a copy of Defendant’s Counterclaim for further details.

H. Interrogatory No. 20

Mindes’ request concerning “detailed job costs [sic] reports” is unduly burdensome and not limited in terms of time. D.M.E. is not obligated to produce every job cost report it has ever made, including when it was prepared, who prepared it, and why it was prepared. Mindes’ interrogatory comprises five auxiliary questions, each of which contains additional subparts. It appears to be an attempt to circumvent Mass.R.Civ.P. 33(a)(2), which limits the number of interrogatories to thirty without permission from the court.
In the interest of expediting the discovery process rather than grant Mindes leave to break the interrogatory into manageable parts, the Court orders that D.M.E. provide any job cost reports produced during Mindes’ tenure, and to provide a brief explanation for any job where a cost report was not produced.

I. Interrogatory No. 21

Mindes’ requests as to “why” D.M.E. made its decision not to pay additional compensation and “the rationale" for its decision are needlessly cumulative, as they ask essentially the same thing. In this regard, D.M.E.’s response that it did not believe Mindes was owed additional money is sufficient. Any further inquiry merely serves to harass D.M.E. for not giving Mindes the response he desires.
With respect to the calculations D.M.E. used, this line of inquiry has been covered in Interrogatory Nos. 6, 14, and 16.

J. Interrogatory No. 25

This interrogatory simply restates portions of Interrogatory No. 20. D.M.E. need not repeat its answers.
D.M.E.’s objection that Mindes’ interrogatories, including subsidiary parts, exceed thirty is well-taken. Mass.R.Civ.P. 33(a)(2). However, both parties are *608 guilty of some gamesmanship, which has made the discovery process more cumbersome. See Partlow v. Hertz Corp., 370 Mass. 787, 790 (1976) (“Compliance with the rules of civil procedure is not accomplished if the parties make of answers to interrogatories some kind of game”); Wojcik v. Boston Herald, Inc., 60 Mass.App.Ct. 510, 516 (2004) (“The discovery process is not a game of cat and mouse”). Therefore, this Court will proceed as though Mindes has already made a proper motion for permission to serve more than thirty interrogatories and the Court has granted it.

K. Interrogatory No. 28

Mass.R.Civ.P. 26(b)(1) entitles Mindes to any information reasonably calculated to lead to admissible evidence, and any disputes over D.M.E.’s practices in calculating payments or commissions are relevant to Mindes’ claims. D.M.E.’s position that Davis and Burnham have not made any “claims” is purposefully evasive, and is at odds with the statement in its answer that “any issues with those two individuals were resolved fully.”
Therefore, it is ordered that D.M.E. provide information about any employee claims over non-payment of compensation — including claims made by Casey Davis and Ben Burnham and the eventual resolution of those claims.
L. Interrogatory No. 29
It is ordered that D.M.E. provide information about payments made to Casey Davis because compensation paid to an employee with a performance-based payment structure similar to Mindes’ is relevant to Mindes’ allegations of bad faith.

3. DISPUTED DOCUMENT REQUESTS

A. Request No. 14
Mindes seeks D.M.E.’s tax filings for 2005 and 2006. If Mindes executes a proposed confidentiality agreement (Def. Opp., Ex. B), D.M.E. has agreed to produce the requested documents. Mindes has indicated that he is amenable to signing a confidentiality agreement (PI. Motion to Compel at p. 5). The Court recommends that the parties resolve this matter through such an agreement.
B. Request No. 18
Mindes seeks W-2s for certain D.M.E. administrators and employees for specified date ranges. The requested W-2 information may be relevant to Mindes’ claims that his compensation was not calculated in accordance with the same criteria used to calculate payments made to other employees whose compensation may have been tied to performance. However, Mindes must show need beyond mere relevance to obtain the W-2s. Courts have recognized a qualified privilege with regard to confidentiality of federal tax filings, and thus Mindes would have to show that the information is highly material and cannot be obtained elsewhere. See Town Taxi, Inc. v. Police Comm’r of Boston, 377 Mass. 576, 586-88 (1979).
Therefore, Mindes’ motion to compel the W-2s is denied without prejudice to give him an opportunity to show that the information cannot be obtained from another source, such as, for example, depositions of the individuals in question.

ORDER

For the foregoing reasons, the plaintiffs motion to compel further answers to interrogatories and production of documents is ALLOWED IN PART and DENIED IN PART.